## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HENRY J. DULAURENCE, III
190 Bridge Street, #5308
Salem, Massachusetts 01970

                Plaintiff

     v.

ARTHUR G. TELEGEN
Seyfarth, Shaw LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02110

     AND

LIBERTY MUTUAL INSURANCE CO.
175 Berkeley Street
Boston, Massachusetts 02116

                Defendants.

**CIVIL RIGHTS COMPLAINT**
(42 U.S.C. Sec. 1983; 28 U.S.C. Sec. 455;
18 U.S.C. Sec. 1503; 18 U.S.C. Sec. 1512(c);
18 U.S.C. Sec. 1512(k); 28 U.S.C. Sec. 1927)

Civil Docket No._____

The plaintiff is *pro se*
(978) 740-0098

The defendant Arthur Telegen was last *pro se*
(U.S. Supreme Court)
(617) 946-4800

The defendant Liberty Mutual Insurance Co. was last
represented by Arthur Telegen (U.S. Supreme Court)
(617) 946-4800

VERIFIED COMPLAINT

2.

## COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such federal action been previously filed and dismissed or transferred after having been assigned to a judge. State Appeals Court decisions with parallel facts are the anti-Slapp decision (panel two), at 83 Mass. App. Ct. 1101, 979 N.E.2d 237 (2012); and the employment law decision (panel one), at 74 Mass. App. Ct. 1125, 909 N.E.2d 558 (2009).

NOW COMES Plaintiff, *pro se,* and for his Complaint against Arthur G. Telegen, and Liberty Mutual Insurance Co., hereby states as follows:

## JURISDICTION AND VENUE

1.   Plaintiff brings this action under Title 42 U.S.C. Sec. 1983—Civil Action for Deprivation of Rights, for certain protections guaranteed to him "secured by the Constitution and laws", the Bill of Rights, and Due Process—both defendants.

2.   Plaintiff brings this action under Title 18 U.S.C. Sec. 1503 (The Omnibus Provision)—obstruction of the "proper administration of law"—both defendants.

3.   Plaintiff brings this action under Title 18 U.S.C. Sec. 1512(c)(1) and (c)(2)— obstruction of  the "proper administration of law"—both defendants.

4.   Plaintiff brings this action under Title 18 U.S.C. Sec. 1512 (k), and Sec. 371— conspiracy in "corruptly obstructing any official proceeding, or attempting to do so" as set out in Title 18 U.S.C. Sec. 1512(c), and Sec. 1503—both defendants.

5.   Plaintiff  brings this action under Title 28 U.S.C. Sec. 455—both defendants.

6.   Plaintiff brings this as an independent action pursuant to Massachusetts and Federal Rules of Civil Procedure 60(b)(3)—both defendants.

7.   Plaintiff brings this independent action pursuant to Fed. R. Civ. P. 60(b)(4).

3.

8.   Plaintiff brings this as an independent action pursuant to the Massachusetts and

Federal Rules of Civil Procedure 60(b)(6)—both defendants.

9.   Plaintiff brings this action under Title 28 U.S.C. Sec. 1927—costs for

'unreasonable and vexatious multiplication of proceedings'—both defendants.

10.   Plaintiff brings this action for the "Intentional Interference with the Practice of

Law"—both defendants.

11.   Plaintiff brings this action for the "Intentional Infliction of Emotional

Distress"—both defendants.

12.   This Court has jurisdiction pursuant to the following:

    a.   Federal jurisdiction pursuant to Article III sec. 2, which extends

jurisdiction to cases arising under the U.S. Constitution and the Bill of Rights;

    b.   28 U.S.C. Sec. 1331, which gives district courts original jurisdiction

over civil actions arising under the Constitution, laws or treaties of the United States;

    c.   28 U.S.C. Sec. 1343 (3) and (4), which gives the district courts

jurisdiction over actions to secure civil rights extended by the United States

government;

    d.   28 U.S.C. Sec. 1367, which gives the district court supplemental

jurisdiction over state law claims.

13.   Venue is appropriate in this judicial district under 28 U.S.C. Sec. 1391(b),

because the  events that gave rise to this Complaint occurred in this district.

**PARTIES**

14.   Plaintiff is a citizen of the United States and resides in the County of Essex,

4.

State of Massachusetts, which is in this judicial district.

15.   Defendant Arthur G. Telegen is an attorney licensed to practice in Massachusetts and the United States Supreme Court. As such, he must act in compliance with the Massachusetts Rules of Professional Conduct and the United States Constitution, vows he had to make before he could receive these licenses. He vowed not disobey civil and criminal statutes which are directed to upholding the integrity of the judicial system and the proper administration of justice.

16.   Defendant Liberty Mutual Insurance Co. is a Massachusetts insurance company licensed to conduct business in Massachusetts. It must comply with court orders. It must comply with  signing and filing papers pursuant to Rules of Civil Procedure 11. As it is licensed to practice law, it must comply with the Massachusetts Rules of Professional Conduct, and not disobey civil and criminal statutes.

## STATEMENT OF THE CASE

17.   On July 7, 1995,  DuLaurence brought an employment action in Suffolk Superior Court against the defendant Liberty Mutual Insurance Company (Liberty) and seven other defendants, one being DuLaurence's immediate supervisor, Kenneth Latronico; another being the senior Vice-president of Liberty's Human Resources, Helen Sayles; and another being Senior Vice-president and Chief Legal Counsel, Christopher C. Mansfield. (Docket No. SUCV 1995-03733).

18.   On September 1, 1995, DuLaurence filed an Amended Complaint and Jury Demand, upon removal from the MCAD and EEOC, raising twelve claims: Count I-discrimination for age, handicap, and retaliation, including violations of Mass. Gen.

5.

Laws c. 151B, sec. 4 and 4A; Count II-breach of employment contract terminable

only for just cause; Count III-breach of contract for year-to-year employment; Count

IV-breach of contract by violation of corrective action and policy and corporate code

of ethics; Count V-wrongful termination; Count VI-negligent breach of contract

term; Count VII-intentional infliction of emotional distress; Count VIII-defamation;

Count IX-tortious interference with employment relationship-Count X-deceit; Count

XI-negligent infliction of emotional distress; Count XII-retaliation for filing a

workers compensation claim.

19.   Counts XIII and XIV were later added to amend the assertions of lack of

good faith and fair dealing; and quantum meruit, to fuller detail them.

20.   Summary judgment was granted on all but Count IX, as to DuLaurence's

immediate supervisor, Kenneth Latronico; John Allen, Latronico's supervisor; and

Allen Whitestone, a supervisor from a different department.

21.   Summary judgment was granted in spite of the improper Ethics and criminal

conduct of the defendants Telegen and Liberty Mutual, set out in Exhibit I, and made

a part of this Complaint pursuant to Rule 10(c). The plaintiff alleged criminal

conduct that was an "obstruction of the proper administration of law" as set out in 18

U.S.C. Sec. 1512 (c), Sec. 1503, and Sec. 1512(k); in Mass. R. Prof. C. 8.4; and

"larceny by trick". The defendants failed to obey court orders, which is "**criminal**

**contempt...outside the presence of the court**". *Avelino-Wright v. Wright*, 51 Mass.

App. Ct. 1, 5 (2002). They signed and filed pleadings misrepresenting fact and law in

violation of Rule 11(b). All sanction motions as to this were denied by the trial court.

6.

22. Summary judgment was also improperly granted due to the Telegen's and

Liberty Mutual's violations of the Massachusetts Rules of Professional Conduct, also

set out in Exhibit I; and, deprivation of rights "secured by the Constitution and laws".

These are subject to redress under 42 U.S.C. Sec. 1983, and 28 U.S.C. Sec. 1927.

23.   Trial was commenced on the intentional interference claims on August 2, 2004.

24.   After more than two weeks of trial, with numerous unsuccessful defense

motions that his case be dismissed, the trial judge (Judge Ball) granted John Allen's

motion for a directed verdict based on Telegen's argument that he had retired  3-4

months prior to the plaintiff's termination. The suit against Allen as an individual

was not for "wrongful termination", but was for harassment, creating a "hostile work

environment", which is an "adverse employment action", and which is subject to

redress. *Noviello v. City of Boston,* 398 F.3d 76 (1st Cir. 2005). That judge later

awarded him $5500 in costs for airfare, hotel expenses, meals, dry cleaning, and cab

fares incurred during his stay in Boston for the length of the entire trial.

25.   The jury returned special verdicts for the remaining defendants, finding that

DuLaurence's Immediate Supervisor Latronico's conduct before terminating

DuLaurence had been been "improper in either motive or means", and "Latronico's

purpose (was for) the legitimate corporate interest of Liberty Mutual".

26.   A timely Rule 59(e) Motion to Amend Judgment and for Partial

Reconsideration of Grant of Summary Judgment as to Liberty Mutual Insurance

Company was denied by the Trial Court (Judge Ball), and upheld by the Appeals

Court (panel one). The Appeals Court ( panel one) failed to address "immediate

7.

supervisor" agency law directly on point: *Burlington Industries, Inc. v. Ellerth*, 524

U.S. 742, 118 S. Ct. 2257 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118

S. Ct. 2275 (1998); and *Crawford v. Metropolitan Government of Nashville And*

*Davidson County, Tennessee*, 129 S. Ct. 846, 72 L. Ed. 650 (2009). It ruled:

> The plaintiff cites no authority that a finding of malice on
> the part of **an employee** (not direct supervisor) is binding
> on the part of an employer, particularly where, **as the jury**
> **found, Latronico was acting in Liberty Mutual's**
> **corporate interests.** (Emphasis added.)

27.   DuLaurence's other appeals to the Appeals Court were denied on July 15,

2009, by Justices Cypher, Meade, and Rubin (panel one).

29.   DuLaurence's Petition for Rehearing, including paragraph 26, was denied.

30.   An F.A.R. Application to the SJC was denied on June 14, 2010.

31.   A Petition for Writ of Certiorari to the United States Supreme Court and

reconsideration were denied, June 14, 2010.

32.   A verified Complaint was filed on July 14, 2010, against Arthur G. Telegen, and

Liberty Mutual Insurance Company. A verified Amended Complaint and Jury

Claim was filed on August 12, 2010, alleging seven causes of action, including

"fraud upon the court", Rule 60(b)(6), made a part of this Complaint pursuant to

Rule 10(c), as Exhibit I. "Fraud upon the court is fraud which is directed to the

judicial machinery itself." *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir.

1985). A judge is not the court, but merely an officer of the court. *People v. Zajic*, 88

Ill. App. 3d 477, 410 N.E.2d 626 (1980). "[A] decision produced by fraud upon the

court is not in essence a decision at all, and never becomes final". *Kenner v. C.I.R.*,

8.

387 F.3d 689 (1968); Rule 60(b)(3); Rule 60(b)(4); and, Rule 60(b)(6). Further,

"[T]he assessment of attorneys' fees as a sanction for bad-faith conduct (involves)

disobedience of the court's orders, and an attempt to defraud the court itself…[It]

depends not on which party wins the lawsuit, but on how the parties conduct

themselves during the litigation". 28 U.S.C. Sec. 1927; *Chambers v. Nasco*, 501 U.S.

32, 52-53 (1991).

33.   Service was returned for Liberty on August 31, 2010.

34.   Telegen had not filed any response to the Amended Complaint, so on September

24, 2010, DuLaurence filed a motion that Telegen be defaulted.

35.   On October 15, DuLaurence filed for a default judgment against Liberty

Mutual, as it had not filed any response.

36.   On October 15, 2010, the defendants filed a 12(b)(6) Motion to Dismiss.

37.   On November 2, 2010, "more than 60 days of the service of the complaint", the

defendants filed an anti-Slapp motion to dismiss—Mass. Gen. L. ch. 231, sec. 59H.

38.   Plaintiff was denied a motion to file in excess of 20 pages for his opposition.

39.   November 5, 2010, the court allowed Liberty's motion to remove the default.

**Anti-Slapp--42 U.S.C. Sec. 1983; 28 U.S.C. Sec. 455(a); 28 U.S.C. Sec. 1927;**
**Rules of Civil Procedure 11(b), 60(b)(3), 60(b)(4), and 60(b)(6)**

40.   On January 3, 2011, the Trial Court allowed the defendants' anti-Slapp motion

as "the defendants' memoranda were detailed and complete" (Exhibit II), and "given

the need for the Court to use its limited time and resources timely and economically,

this court will not elaborate further."; and the Rule 12(b)(6) motion, "secondarily to

the allowance of anti-Slapp", and entered judgment for the defendants.

9.

41.   The defendants' anti-Slapp argument which was adopted by the Trial Court, and then by the Appeals Court, Justices Trainor, Agnes, and Sullivan (panel two), is incorporated and made a part of this Complaint as Exhibit II, pursuant to Rule 10(c).

42.   On May 3, 2011, judgment for the defendants was entered by the Trial Court for anti-Slapp statutory costs and attorneys' fees in the amount of $29,858.82.

43.   Although the anti-Slapp judgment was entered for the defendants, there is no case law in any jurisdiction which would support any of the elements needed to invoke Mass. Gen. Laws ch. 231, Sec. 59H; the defendants' motion was frivolous, and the ensuing judicial rulings had no legal or factual foundation to support them:

(a).   For anti-Slapp to apply, the moving party's burden at the initial stage is to establish that they engaged in "petitioning activity", that the complaint was based "solely" on "petitioning activity", and had no other "substantial basis". *Duracraft v. Holmes Prods. Corp.*, 427 Mass. 156, 161-162 (1998).

(b).   "At this stage, [t]he focus **solely** is on the conduct complained of". (Emphasis added.) *Office One Inc. v. Lopez,* 437 Mass. 113, 122 (2002); *Ehrlich v. Stern,* 74 Mass. App. Ct. 531, 542 (2009). "We have repeatedly denied G.L. c. 231, sec. 59H motions to dismiss where the underlying conduct involves both petitioning activity and activity not considered petitioning". *Brice Estates, Inc. v. Smith & Others*, 76 Mass. App. Ct. 394, 396 (2010).

(c).   Anti-Slapp is determined "without passing judgment on the merits". *Cadle Company v. Schlichtmann*, 488 Mass. 242, 254 (2007).

**In addition: 18 U.S.C. Sec. 1512(c), Sec. 1503, Sec. 1512(k), Sec. 371**

10.

(d).    Alleged "[s]tatements and conduct in the course of judicial proceedings" used to further an alleged improper purpose are not "petitioning activity". *Adams v. Whitman*, 62 Mass. App. Ct. 850, 854-855 (2005). "Clearly, an allegation that an attorney sabotaged litigation...is not an allegation that implicates petitioning activity". *Erlich v. Stern, supra,* at 541-542.

(e).    Other allegations set out in Exhibit I are not 'petitioning to the court' in the first place, although a defendants' argument to the Trial Court, which the Appeals Court (panel two) upheld, was that "DuLaurence's entire complaint relates to Liberty Mutual's and Telegen's conduct and statements in connection with the underlying litigation", making these Ethics violations legal. This is ludicrous, and shows what a frivolous motion that was.  If this were the law, the entire Massachusetts Rules of Professional Conduct would be vitiated. A violation of a court order is a **"criminal contempt...outside the presence of the court** and consists either of a willful and knowingly disobedience of a court order or an act which...obstructs or impedes the administration of justice". (Emphasis added.) *Avelino-Wright v. Wright*, 51 Mass. App. Ct. 1, 5 (2002). "[D]isobeying the court's orders (are) abuses of process occurring beyond the courtroom". *Chambers v. Nasco*, 501 U. S. 32, 57 (1991).

(f).    Alleged criminal acts create a "substantial basis" for rendering any petitioning activity 'unprotected'. *Ayasli v. Armstrong*, 56 Mass. App. Ct. 740 (2002). "'Conduct that is prejudicial to the administration of justice' permits a non-moving party's claim to survive a special motion to dismiss as it has a 'substantial basis'". *In the Matter of the Discipline of an Attorney*, 442 Mass. 660, 674 (2004).

11.

[A]ggressive lawyering of this sort is not protected petitioning activity". *Cadle v. Schlichtmann, supra, at* 254. The Appeals Court (panel two) should have proceeded further from page 252 in this case cited by it to support its ruling that these acts were entirely "protected petitioning activity". Further, claims of "fraud upon the court" underlie maintaining the integrity of the judicial system, and are a "fraud which is directed to the judicial machinery itself". *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985).

### Code of Judicial Conduct Canon 3D—Integrity of the Judicial System

44.  On numerous occasions throughout both cases the plaintiff reported Telegen's unethical and criminal conduct to Bar Counsel pursuant to his obligation to do so under Mass. R. Prof. C. 8.3. Judge Nancy Holtz failed to respond to a letter, then denied a motion pursuant to the Code of Judicial Conduct for her to report this "suspected" conduct to Bar Counsel, following Bar Counsel advising the plaintiff, "To date, you have provided no evidence that any court has accepted you claims of discovery abuse...We cannot interfere with decisions made by a court". The plaintiff filed an appeal as to that, and requested the Appeals Court to report the case, as its duty to uphold the integrity of the judicial system. Although Telegen had admitted to several violations in oral argument, including not having provided court ordered salary discovery, court ordered employee handbooks, and court ordered deponents, the Appeals Court denied this appeal, and the motion to report the case.

45.  The plaintiff was denied oral argument to which he was entitled. Mass. R. App. P. 22. This would not have been good support for the integrity of the judicial system.

12.

## STATEMENT OF OPERATIVE FACTS: MASSACHUSETTS RULES OF PROFESSIONAL CONDUCT; MASSACHUSETTS RULES OF CIVIL PROCEDURE; AND CRIMINAL CONDUCT BY THE DEFENDANTS.

46. In 1995, some 185 interrogatories were served on the eight defendants, with 12 causes of action, many of which were not responded to. At oral argument, the Appeals Court panel asked why this had happened. Attorney Telegen responded that these were too many. "THE COURT: Now Counsel, you mention that there were a certain number of interrogatories asked and a certain number of admissions asked for. In a typical lawsuit, that's not necessarily a large number". This violated  Mass. R. Prof. C. 3.1; 3.4 (d).

47. Requests for admissions of fact were served on the defendants at the same time, which were not responded to for almost one year, a violation of Mass. R. Prof. C. 3.4 (d). When the plaintiff brought a motion to have them admitted, the trial court gave them another 30 days to respond.

48. When the plaintiff brought a motion to compel answers to interrogatories and responses to document requests, the trial court, Judge Ball, ordered that the plaintiff re-draft all his interrogatories and requests. It should be noted that the plaintiff was a Martindale-Hubbell AV rated attorney, with voluminous trial experience of some 28 years. He had also been appointed by then Chief Justice Steadman to serve on the State 1988 Time Standards Committee as the litigation attorney consultant.

49. The plaintiff filed an interlocutory appeal as to the discovery rulings, which a single justice denied, stating such rulings were in the discretion of the trial court judges.

50. The plaintiff served a second and third set of discovery requests.

51. Attorney Telegen proceeded not to respond to those, arguing that they were too similar to the first sets; a violation of Mass. R. Prof. C. 3.1; 3.4 (a); and 3.4(d).

13.

52. Attorney Telegen then proceeded to aver in every opposition to motions for sanctions, and in depositions instructing witnesses not to answer questions, that `first Judge Ball, then the Appeals Court, and then Judge Ball again, had ruled that all the material sought was not subject to discovery', violations of Mass. R. Prof. C. 3.1; 3.3 (a); and 3.4 (a).

53. When Judge Ball was made aware of what was going on, she issued a ruling emphasizing the fact that her rulings were not "on the merits of any discovery dispute in the past but, instead, addressed scheduling and discovery disputes only". [Emphasis by the court.]

54. This did not deter Telegen, who continued to lie to mislead judges, using that set out above in paragraph 52; and based on those lies, continually instructed deponents not to answer questions; violations of Mass. R. Prof. C. 3.1; 3.3 (a)(1)-(4); 3.4 (a) and (d); 3.5 (a) and (c); and Mass. R. Civ. P. 11; 18 U.S.C. Sec. 1512(c)(2); 18 U.S.C. Sec. 1503; 42 U.S.C. Sec. 1983.

55. Attorney Telegen continued to fail to produce people for ordered depositions, violations of Mass. R. Prof. C. 3.4 (a); 18 U.S.C. 1512(c)(2); 42 U.S.C. Sec. 1983.

56. On December 23, 1996, Attorney Telegen's motion for a protective order for the taking of two witness-defendants' depositions was denied by the trial court.

57. In spite of the above, and a further order in April, 1997, Attorney Telegen still refused to produce them, in violation of Rule 3.4 (c); and Mass. R. Civ. P. 37(b)(1).

58. When new notices were sent out, Attorney Telegen responded by letter advising the plaintiff that it did not matter what the rulings had been, he was not going to produce the deponents, again being in contempt of court, Mass. R. Civ. P. 37(b)(1); and violating the Rules of Ethics.

59. The plaintiff filed sanction motions, which were set down for February 11, 1997.

14.

60. The plaintiff was not informed of this hearing, as the plaintiff's notice had been inadvertently sent to the defendants, who failed to forward the notice, advise the plaintiff by telephone, or advise the court that they had received his notice.

61. In spite of this, they argued their opposition to the motions, in violation of Mass. R. Prof. C. 3.5 (a) and (b). They then filed a successful objection to a motion for a rehearing.

62. Also obtained from this illegal communication with the judge, was a ruling that the plaintiff was the one who was improperly conducting discovery, and that the case was brought merely to harass his former employer. This untoward ruling was then set out by Attorney Telegen in all subsequent discovery motions and oppositions, as the law of the case. This violated Mass. R. Prof. C. 3.1; 3.3 (a) (l)-(3); 3.4 (a), (c), (d); and 3.5 (a), (b), and (d).

63. In April, 1997, Telegen filed a frivolous motion, that he now would not produce deponents until the plaintiff filed a $25,000 bond. It was based on the boot-strapping of his ruling obtained in paragraph 62, and his intentional misstatement of claims set out by the plaintiff. He knew this motion to be frivolous, being in violation of Rules 3.1; 3.3 (a)(1)(3); 3.4 (d); and Mass. Gen. L. ch. 231, sec. 6F. He continued to violate the December 23, 1996, and April 4, 1997, orders.

64. In May, 1997, Telegen filed another protective order motion for one of the 2 noticed deponents, which had been the subject of his motion for a protective order that had been denied on December 23, 1996, some 6 months earlier. That judge allowed his motion in part, denying the testimony supporting illegal billing practices by Liberty Mutual, one of his retaliation claims.

65. Telegen then filed an opposition to the plaintiff's 30(b)(6) deposition of Liberty Mutual,

15.

Human Resources, as to Ch. 151B, sec. 4, (4A) claims involving testifying in a sexual harassment hearing; violations of Mass. R. Prof. C. 3.1; 3.3 (a)(1), (3); and 3.4 (a), (d).

66. After the defendants' opposition to that discovery was allowed, they subsequently argued in summary judgment and on appeal, that the plaintiff had failed to prove matters which had been the subject matter of that noticed deposition, and to which they had argued was "irrelevant" and "harassing", like "there is no evidence that either DuLaurence or Latronico's secretary ever asserted a claim of gender discrimination or sexual harassment". This was in violation of Mass. R. Prof. C. 3.1; 3.3(a)(1)-(3); 3.4 (a), (d); and Mass. R. Civ. P. 11.

67. Attorney Telegen again argued, "Liberty Mutual has proved to the Court on numerous occasions that the information that DuLaurence wants in the Rule 30(b)(6) deposition is irrelevant, and that he seeks the deposition only to harass his former employer. For example, DuLaurence claims ... Liberty [Mutual was] `essentially stealing money from the insureds'". Although this was one of the plaintiff's whistle blowing claims against Liberty Mutual, along with ch. 93A and 176D violations, the plaintiff was deprived discovery to prove these allegations, Telegen successfully arguing relevance as to the Liberty deposition, and instructing other deponents not to answer any questions relating to billing; violations of Mass. R. Prof. C. 3.1; 3.3 (a)(1) and (2); 3.4 (a), (d); and 3.5 (a).

68. Attorney Telegen eventually was ordered to respond to the original interrogatories and produce documents pursuant to the initial production requests submitted by the plaintiff, and in particular those relating to employee manuals and salary information.

69. Attorney Telegen never produced ordered (1) employee manuals needed by the plaintiff to support his position that he was not an employee at will; nor (2) ordered salary information which was needed not only for damages, but needed to show age discrimination through disparate

16.

impact, and disparate treatment, violations of Rule 3.4 (a), (c), and (d); and a contempt of

court under Mass. R. Civ. P. 37(b)(1). Entire seminars are devoted to the importance of employee

manuals relating to whether an employee was one at-will, or under some type of contract.

70. Not only did he not produce salary records as directed, but in subsequent oppositions

to plaintiff's motions for sanctions and discovery, Attorney Telegen told the court he had already

produced them, and the plaintiff should be financially sanctioned for wasting the court's time--

Ethics, and Rule 11 violations. The court believed Attorney Telegen, sanctioning the plaintiff.

71. Three judges in a Norfolk Superior employment case during the same time frame

sanctioned Telegen for perpetrating a similar Ethics violations, and sanctioned him $5000, and

$8000; then threatened him with default. The SJC also reprimanded him for his Ethics violations.

72.  It was always a "he said, she said" situation, with the Trial Court choosing to believe the

`officer of the court' from the prestigious firm of Foley, Hoag.

73. However, at oral argument in 2009 before the Appeals Court panel, Telegen

admitted that he had not produced ordered employee handbooks, although prior to

that admission, he told the trial court the plaintiff had been provided with "a copy of an employee

handbook". He also admitted that he had not produced any salary information ordered by the

trial court. These were violations of Mass. R. Prof. C. 3.1; 3.3 (a)(1)-(4); 3.4 (a), (c), (d); and 3.5

(a), (c); contempt of court, Mass. R. Civ. P. 37 (b)(1); and Mass. R. Civ. P. 11.

74. The defendants took the plaintiff's sanction award with the knowledge that it was

predicated on the lies told to the trial court that "defendants have twice produced these

documents"; violations of Mass. R. Prof. C. 3.1; 3.3 (a)(1), (2), (4); 3.5 (a); and the

criminal act of larceny.

17.

75. Attorney Telegen's not producing salary information allowed him to argue that "DuLaurence produced no evidence that would support a finding that the treatment he received from the defendants, and his ultimate termination, were in any way motivated by his age"; this all in violation of Mass. R. Prof. C. 3.1; 3.3 (a)(1)-(4), (b); and 3.4 (a), (c), (d).

76. Attorney Telegen's not producing employee handbooks allowed him to successfully argue in his summary judgment motion that the plaintiff was an employee at-will, stating: "The Court will weigh the following factors in assessing whether an employee manual creates an implied contract between employer and employee..." Attorney Telegen failed to note that he had refused to produce the ordered employee handbooks, denying the plaintiff any opportunity to assert an opposition to this; violations of Mass. R. Prof. C. 3.1; 3.3 (2): 3.4 (a), (c), and (d).

77. Attorney Telegen's not producing employee handbooks allowed him to successfully oppose the plaintiff's Rule 59(e) motion, that judgment should not enter for the plaintiff pursuant to the jury verdict because "his employment at Liberty was at-will".

78. Attorney Telegen's not producing employee handbooks allowed him to successfully argue that the plaintiff could not recover under his quantum meruit claim, as "there is no (employment) contract".

79. Telegen successfully argued against Helen Sayles' deposition, as the plaintiff was merely harassing her. She was not only a direct defendant, but was also the head of Human Resources for the defendant Liberty Mutual in charge of administering the plaintiff's termination, and was also in charge of the sex discrimination case complaint in which the plaintiff testified. In April, 1997, one trial court judge had ordered that her deposition was to be taken. Another judge listened to Telegen's lies, ruling against the taking of her deposition. A third judge, after being shown that her deposition had been ordered, allowed for a re-noticing and filing a motion for her deposition. Following that, Telegen did some forum shopping, and told that judge that the taking

18.

of her deposition had already been denied 3 times. These were violations of Mass. R. Prof. C. 3.1; and 3.4 (a), (d); and Mass. R. Civ. P. 11. Her trial testimony showed that at the time of the plaintiff's termination, he was a "contract" employee, not one "at will".

80. Telegen successfully argued a protective order motion which precluded the deposition of Liberty employee Helen Gilcrist, author of "the plan" memorandum as to how to terminate the plaintiff—because he could not have been terminated without a three month probation period, as he had been with the company 10 years. The courts stated in rulings justifying summary judgment that they had no way of determining what "the plan" was, so could not tell if, or how, Liberty was involved. This was set out in the employee manual written by Helen Sayles, referred to by Telegen in oral argument, as "responsible for carrying out the policy of Liberty".

81. Although Attorney Telegen holds himself out as an expert, he asserted facts and law in summary judgment, trial, and post-trial motions which he knew were wrong, again in violation of Mass. R. Prof. C. 3.1; 3.3 (a)(1), (3); and Mass. R. Civ. P. 11, like the special verdict by the jury as to liability for the Rule 59(e) motion "was not essential to the verdict".

82. Another violation pertains to the directed verdict argument for John Allen. "[T]he jury could not reasonably infer that Allen, who retired before DuLaurence was placed on probation, took any actions that caused DuLaurence to be terminated". The courts adopted this argument although it had nothing to do with the case that was being tried. The case being tried was not one for "Wrongful Termination" against John Allen, but one for "Tortuous Interference with Employment Relationship". Termination is only one type of "adverse employment action", not determinative as to "impermissible harmful interference".

83. Attorney Telegen failed to advise the courts that they had failed to consider the

19.

law of agency, which underlies all employment law, as a company can only act through its

agents, a violation of Mass. R. Prof. C. 3.3 (a). He then argued to the jury that if they find that

the actions by the plaintiff's immediate supervisor were improper, that it was Liberty Mutual

(the "empty chair") that was responsible for those actions. The jury by way of special

verdicts subsequently found for the plaintiff on "harassment" and "improper termination",

and then against Liberty Mutual for directing the improper behavior.

84. The above also led to the failure to employ "immediate supervisor law" regarding Mass.

R. Civ. P. 59(e), the plaintiff's motion to bring Liberty Mutual back into the case. The courts

merely adopted the defendants' arguments, which knowingly and purposefully mislead the

courts in both fact and law. It was argued the plaintiff was an employee "at-will", as he had

produced no employee handbook language to controvert it. He had also been denied this proof

by the failure to allow the court ordered Helen Sayles' deposition. (Paragraphs 76-80.)

85. The defendants used the same argument of harassment and relevance to preclude the

deposition of Liberty's CEO for whom the plaintiff performed work, although the plaintiff had

cancelled checks and deposition testimony from Liberty Mutual vice-presidents evidencing

that he had been working with the CEO on various projects. This denied him the opportunity to

prove "quantum meruit", and to dissuade the defendants' argument that it was the mid-manager

Defendant John Allen who set out the requirements for a "career" at Liberty. Allen was not its

spokes person, one of Telegen's knowingly improper arguments which the courts adopted.

86. The defendants filed a fraudulent affidavit in a bill of costs in violation of criminal law;

Mass. R. Prof. C. 3.3(a)(1), and 3.5(a); and Mass. R. Civ. P. 11.

20.

## COUNT ONE

**Title 42 U.S.C. 1983—Violation of the Bill of Rights and the Fourteenth Amendment-Deprivation of Rights—both defendants**

87.   The plaintiff hereby re-alleges and incorporates by reference, as if fully set

forth and restated herein, paragraphs 1 through 45, and in particular 46 through 86,

setting out factual allegations as opposed to "mere conclusions". *Bell Atlantic Corp.,*

*et al. v. Twombly, et al.*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965 (2007).

88.   "It is axiomatic that 'a fair trial in a fair tribunal is a basis requirement of due

process'". *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct 2252, 2259, 173 L. Ed.

1208 (2009).

89.   The defendants separately, together, and with others did knowingly,

intentionally, and corruptly obstruct the plaintiff's right to redress guaranteed

by the Bill of Rights and Fourteenth Amendment of the United States Constitution.

They violated the mandates of the Massachusetts Rules of Professional Conduct, the

license to practice law given them by the state of Massachusetts, and criminal law set

out in Counts Two, Three, and Four below, and incorporated herein. These acts were

prejudicial to the effective and expeditious administration of the business of the

courts and the administration of justice, depriving the plaintiff of his Constitutional

rights. (Title 42, United States Code, Section 1983.)

90.   The defendants acted intentionally and with callous disregard to the plaintiff's

Constitutional rights.

91.   As a direct and proximate result of the defendants' violations of the plaintiff's

Constitutional rights, the plaintiff has suffered severe and substantial damages. The

21.

damages include lost salary, lost employee benefits, lost raises, lost earning capacity,

lost career and business opportunities, litigation expenses including costs and

attorneys' fees, loss of reputation, humiliation, embarrassment, extreme mental and

emotional anguish and distress, high blood pressure, open heart surgery, and other

compensatory damages, in an amount to be determined by the jury and the Court.

### COUNT TWO

**Obstruction of Justice--both defendants**
**Title 18 U.S.C. Sec. 1512(c)(1) and Sec. 1512(c)(2)**

92.  The plaintiff hereby re-alleges and incorporates by reference, as if fully set forth

and restated herein, paragraphs 1-91, in particular paragraphs 46 through 86, setting

out factual allegations as opposed to "mere conclusions". *Bell Atlantic Corp., et al. v.*

*Twombly, et al.,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965 (2007).

93.  The defendants, separately, together, and with others, did knowingly,

intentionally, perpetrate criminal acts, which are subject to prosecution by the U. S.

Department of Justice (Public Integrity Section). "Whoever corruptly or otherwise

obstructs, or influences any official proceeding, or attempts to do so, shall be fined

under this title or imprisoned not more than 20 years, or both". Title 18, United States

Code, Section 1512 (c). (Title 18, United States Code, Sections 3238 and 3551 et

seq.)

94.  The defendants argued the following to the courts as to anti-Slapp "petitioning

activity": "DuLaurence's entire complaint relates to Liberty Mutual's and Telegen's

conduct and statements in connection with the underlying litigation [an "official

proceeding"] against Liberty Mutual. Accordingly, the first prong of the anti-Slapp

22.

statute is easily satisfied". Although the Trial Court agreed with this argument, as did

the Appeals Court (panel two), this ruling goes completely against that set out in the

above paragraph, and the Massachusetts Rules of Professional Conduct. This

certainly was an interesting argument when one considers that this could lead to

criminal prosecution, with the possibility of a 20 year prison sentence.

95.  "[T]ampering with the administration of justice…involves far more than an

injury to a single litigant. It is a wrong against the institutions set up to protect and

safeguard the public". *Chambers v. Nasco*, 501 U.S. 32, 44 (1991).

96.  The defendants made representations to the courts, knowingly arguing incorrect

law and facts for the purpose of misleading the court, which were intended, and

which they had reason to expect would be acted upon as truthful, as Telegen and

Liberty Mutual's attorneys were officers of the court. These misrepresentations of

fact and law caused rulings that prevented the plaintiff from obtaining relevant

information, "[impinging] on Constitutional protections". *Hickman v. Taylor,* 329

U.S. 495, 501 (1947). Mass. R. Prof. C. 8.4.

97.  "Corruptly" for the purposes of Section of 18 U.S.C. sec. 1512(c) connotes

"wrongfulness or impropriety". *United States v. Johnson,* 553 F. Supp. 2d 582, 626

(E.D. Va. 2008), citing *Arthur Anderson LLP v. United States*, 544 U.S. 696, 705

(2005). And in *United States v. Townsend,* 630 F.3d 1003 (11th Cir. 2011), that the

natural and probable effect of the defendants' conduct would be the interference with

the due administration of justice (Mass. R. Prof. C. 8.4). Id. at 1115.

98.  *Restatement (Second) of Torts* sec. 682 (1977), provides:

23.

> One who causes a legal process, whether criminal or civil,
> against another primarily to accomplish a purpose for which
> it is not designed is subject to liability to the other for harm
> caused by that abuse of process. Id.

99. One is liable if aware "of the use to which the information is to be put, and

intends to supply it for that purpose". 37 C.J.S. *Fraud*, sec. 106, at 302 (2008).

100. Obstruction of justice is not a sole intent crime; convictions are sufficient

when there is a dual intent, and the obstruction was only a part of the motive for

taking the obstruction act. *See e.g., United States v. Bailey*, 405 F.3d 102 (1st Cir.

2005).

101. These provisions condemn the obstruction of judicial proceedings. There must

be proven: (1), there was a pending judicial proceeding; (2), that a defendant knew

the proceeding was pending; and (3), that the defendant corruptly endeavored to

influence, obstruct, or impede the due administration of justice. *United States v.*

*Price*, 951 F.2d 1028, 1030-1031 (9th Cir. 1991); *United States v. Specher*, 783 F.

Supp. 133, 163 (S.D.N.Y. 1992). Plaintiff incorporates the paragraphs in Count One.

102. 'It is the mere knowledge of the possibility that ones false or misleading

statements would interfere with the proper administration of justice'. "The

defendant's actual design is irrelevant". *United States v. Neiswender*, 590 F.2d 1269,

1272-1274 (4th Cir. 1979).

### COUNT THREE

**Title 18 U.S.C. sec. 1512(c), sec. 1512(k); Title 18 U.S.C. sec. 371**
**Conspiracy to Obstruct Justice- both defendants**

103. The plaintiff hereby re-alleges and incorporates by reference, as if fully set forth

24.

and restated herein, paragraphs 1 through 102; and specifically 46 through 86, 91.

104. The defendants, together with others, did knowingly, intentionally, and corruptly obstruct, influence and impede an official proceeding contrary to Title 18, United States Code, sec. 1512(c). (Title 18, United States Code, Sections 1512(k), 3238 and 3551 et seq.; Title 18, United States Code, Section 371.)

## COUNT FOUR

### Obstruction of Judicial Proceedings
### Title 18 U.S.C. 1503, The Omnibus Provision—both defendants

105. The plaintiff hereby re-alleges and incorporates by reference, as if fully set forth and restated herein, paragraphs 1 through 104; and specifically 46-86, and 91.

106. The defendants separately, together, and with others, did knowingly, intentionally, and corruptly obstruct, influence and impede an official proceeding…(Title 18, United States Code, Sections 1503, 1512(k), 3238 and 3551 et seq.) (Mass. R. Prof. C. 8.4.)

107. This provision condemns the obstruction of judicial proceedings. There must be proven: (1) there was a pending judicial proceeding; (2) that a defendant knew the proceeding was pending; and (3) that the defendant corruptly endeavored to influence, obstruct, or impede the due administration of justice. *United States v. Price,* 951 F.2d 1028, 1030-1031 (9th Cir. 1991); *United States v. Specher,* 783 F. Supp. 133, 163 (S.D.N.Y. 1992).

## COUNT FIVE

### Rules of Civil Procedure 60(b)(3)
### Fraud, Misrepresentation or Misconduct by an Opposing Party

25.

### Independent Action—both defendants

108. The plaintiff hereby re-alleges and incorporates by reference, as if fully set forth
and restated herein, paragraphs 1 through 107, 144-"pattern evidence", and 91.

109. The Reporter's Notes state: "Rule 60(b)(3) includes any wrongful act by which
a party obtains a judgment under circumstances which would make it inequitable for
him to retain its benefit. Fraud covered by Rule 60(b)(3) must be of such nature as to
have prevented the moving party from presenting the merits of his case", citing
*Assmann v. Fleming*, 159 F.2d 322 (8th Cir. 1947); *U.S. v. Rexach,* 41 F.R.D. 180
(D.P.R. 1966).

110. The SJC in *In the Matter of Crossen*, 450 Mass. 533 (2008), stated: "The
disciplinary rules are written in terms that any attorney bound by them should
readily understand". Id. at 554. See paragraphs 46 through 86. 'There must be a
default sanction if the conduct interferes with the proof of the plaintiff's case, and
deprives him the opportunity to litigate his claim'. *Keene v. Brigham and Women's
Hospital, Inc.,* 56 Mass. App. Ct. 10, 24, 775 N.E.2d 725, 735 (2002).

111. And in *Wong v. Luu, et al.,* 28 Mass. L. Rptr. 275 (2011), the Court stated:

> [He] impeded 'the full and effective administration of
> justice' and 'delayed the adjudication of legitimate claims
> and defenses…and squandered limited judicial resources'…
> [His] conduct was fundamentally dishonest…and a breach
> of his core professional duty of good faith and fair dealing
> with other counsel. Further, it was a fundamental breach of
> duty of candor to the Court. Rule 3.3 of the Rules of
> Professional Conduct…The Court has been materially
> prejudiced…[T]he most severe sanction in the spectrum
> must be available to not only penalize…but to deter putitive
> offenders in future cases. Id. at 277.

26.

## COUNT SIX

**Rules of Civil Procedure 60(b)(4)—Judgment(s) in the Employment Case are Void
Title 28 U.S.C. Sec. 455(a) and (b)(1), as to Appeals Court Panel One, including
Criminal Violations Pursuant to 18 U.S.C. Sec. 1512(c)(2),  18 U.S.C. 1503;
and 42 U.S.C. sec. 1983—both defendants**

112.   The plaintiff hereby re-alleges and incorporates by reference, as if fully set

forth and restated herein, paragraphs 1 through 111, and particularly 91.

113.   Again, "It is axiomatic that 'a fair trial in a fair tribunal is a basic

requirement of due process'". *Caperton v. A.T. Massey Coal Co., Inc., supra.*

114.   "'[F]raud upon the court' (by an officer of the court) is a crime deemed so

severe and fundamentally opposed to the operation of justice that it is not subject

to any statute of limitation. Officers of the court include Lawyers (and) Judges…

'Fraud upon the Court'…is a fraud perpetrated by officers of the court so that the

judicial machinery can not perform in the usual manner its impartial task of

adjudging cases that are presented for adjudication.' *Kenner v. C.I.R.,* 387 F.3d

689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, sec. 60.23. In *Bulloch v.

United States,* 763 F.2d 1115, 1121 (10th Cir. 1985), the Court stated, 'Fraud upon

the court is fraud which is directed to the judicial machinery itself and is not fraud

between the parties…It is where the court or a member is corrupted or influenced

or influence is attempted or where the judge has not performed his judicial

function—thus where the impartial functions of the court have been directly

corrupted.'" Wikipedia.

115. As set out above, the members of the panel of the Appeals Court (panel one)

in the employment case not only changed the facts from what they had obtained

27.

from the briefs and had addressed in oral argument (as set out in the transcript), to

an entirely different set of facts to support their illegal decision. The Court

completely failed to address the violations of the Massachusetts Rules of

Professional Conduct; the violations of Mass. R. Civ. P. 11; and the alleged

criminal conduct, as it had at oral argument, set out earlier. The Court stated: "[The

plaintiff] contends that Liberty Mutual engaged in a pattern of withholding

information necessary to prove his case…It is unnecessary to enter this thicket. The

plaintiff has not [shown] any abuse of discretion (by Judge Carol Ball)".

116.  The Court failed to Constitutionally address the special jury verdicts, based on

the principal of *stare decisis*, which holds that a court's decision in a particular case

must comport with the rules of law as they have been determined in previous cases.

For this and other issues, it re-invented the facts to support its rulings.

117.  The Appeals Court (panel one) engaged in conduct which constituted illegal

acts set out in 42 U.S.C. sec. 1983, and obstruction of justice in violation of 18

U.S.C. sec. 1512(c), conduct which constitutes one or more grounds for

impeachment under Article II, sec. 4, of the United States Constitution.

118.   Abuse of discretion applies when a court does not apply the correct law; or if

its decision rests on a clearly erroneous finding of a material fact *U.S. v. Rahm*, 993

F.2d 1405, 1410 (9th Cir. 1993); or where the record contains no evidence to

support its decision. MGIC *v. Moore,* 952 F.2d 1120, 1122 (9th Cir. 1991); *Cooter

& Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990). Under this "arbitrary and

capricious" standard, the rulings must be determined to be invalid.

28.

119. Supreme Court Justice Stephen Breyer in his September, 2006, *Implementation of the Judicial Conduct and Disability Act of 1980-A Report to the Chief Justice*, stated:

> The federal judiciary, like all institutions, will sometimes suffer
> instances of misconduct...[A] system that relies for investigation
> solely upon judges themselves risks a kind of undue "guild favoritism"
> through inappropriate sympathy with the judge's point of view or de-
> emphasis of the misconduct problem. Id. at page 1.

120. The Code of Judicial Conduct, Canon 1, "Integrity of the Judiciary":

> Commentary...(Judges) must comply with the law...[V]iolation
> of this Code diminishes public confidence in the judiciary and thereby
> does injury to the system of government under the law.

Judicial abuse must be adequately sanctioned. *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991). "While review after final judgment can (at a cost) cure the harm to the litigant, it cannot cure the additional, separable harm to public confidence that sec. 455 is designed to prevent". *In re Sch.. Asbestos Litig.*, 977 F.2d 764, 776 (1992).

121. Evidence shows that Panel One knew before oral argument, by reading the plaintiff's Brief, that Telegen had perpetrated violations of the Ethics rules. "Fraud upon the court" denies one due process of redress under the Fourteenth Amendment; the courts must "'set aside fraudulently begotten judgments...necessary to the integrity of the courts for tampering with the administration of justice...[It] involves more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public...'[A] court has the power to conduct an independent investigation to determine whether it has been a victim of fraud". (Citations omitted.) *Chambers v. Nasco*, 501 U.S. 32, 44 (1991).

122. Some Ethics and criminal violations were inquired in to by the Appeals Court

29.

(panel one) justices. The panel should have decided on any cover-up **prior to** oral

argument. The following is set out in the oral argument transcript:

a.   The Court asked Telegen why he had not produced court ordered employee

handbooks, which is basic discovery in employment cases for the determination of

"employee at will", or "contract" employee: *LeMaitre v. Massachusetts Turnpike*

*Authority*, 70 Mass. App. Ct. 634, 638, 876 N.E.2d 888, 892 (2007); *O'Brien v. New*

*England Tel. & Tel.Co.,* 422 Mass. 686, 691, 664 N.E.2d 843, 847 (1996): "THE

COURT: Why didn't you turn over the employee handbook?"

b.   The Court asked why Telegen did not answer requests for admissions or

interrogatories as required by the Massachusetts Rules of Civil Procedure, basic to

discovery in any case: "THE COURT: Now Counsel (Telegen), you mention that

there were a certain number of interrogatories asked and a certain number of

admissions asked for. In a typical lawsuit, that's not necessarily a large number."

c.   The Court asked why he had not turned over court ordered salary discovery, basic

discovery in employment cases to determine age discrimination by "disparate

impact"—*Smith College v. Mass. Comm'n Against Discrimination*, 376 Mass. 221,

380 N.E.2d 121 (1978); by "disparate treatment"; and to determine "damages"—

*Boothby v. Texon, Inc.,* 414 Mass. 468 (1993): "Mr. Telegen: Your Honor, we were

asked for salaries of all our employees which wasn't turned over."

d.   The Court inquired as to Telegen's failure to comply with a court order denying

his **Motion for a Protective Order** as to a defendant and senior vice-president of

Liberty Mutual's Legal Department, who had been noticed and re-noticed for a

30.

deposition three times during the six months prior thereto. Telegen's misdirection

why he had failed to comply with the order denying his "Motion For Protective

Order", lying to the Appeals Court, stating that the judge had "denied the **motions to**

**compel**...For all he knows, it may have thought it was Mr. DuLaurence's's motion".

123.  These Ethics violations, criminal acts, and failure to produce even the most

basic of employment discovery were prejudicial to the effective and expeditious

administration of the business of the courts and the proper administration of

justice, and certainly had been "identified". It would take a book to recount all the

misrepresentations and abuses perpetrated by the defendants. As the Appeals Court

stated in its Memorandum And Order, the plaintiff did attempt to write a book: "This

record appears to contain over 3,000 pages of pleadings". The Court stated:

> He contends that Liberty Mutual engaged in a pattern of
> withholding information necessary to prove his claims and
> lists various motions in his brief at pages 3-11 and 21-31.
> Similarly, the defendants comment on the discovery process
> in their brief at pages 3-5, highlighting instances of
> dissatisfaction with the plaintiff's motions. It is unnecessary
> to enter this thicket.

The Court failed to state that the "dissatisfaction" was caused by the many

misrepresentations, and criminal and Ethics violations set out in that "book", and in

the plaintiff's Amended Complaint in the anti-Slapp case (Exhibit I). "[A] party may

be sanctioned for abuses of process **occurring beyond the courtroom**, such as

disobeying the court's orders". (Emphasis added.) *Chambers v. Nasco,* 501 U.S. 32,

57 (1991). A violation of a court order is a **"criminal contempt...outside the**

**presence of the court**, and may consist of a willful and knowing disobedience of a

31.

court order or an act which…obstructs or impedes the administration of justice".

(Emphasis added.) *Avelino-Wright v. Wright*, 51 Mass. App. Ct. 1, 5 (2002). 28

U.S.C. Sec. 1927; 42 U.S.C. Sec. 1983; 18 U.S.C. Sec. 1512(c)(2), and Sec. 1503.

124.  Other evidence that a cover-up was devised after oral argument, showing Panel

One had read the briefs **prior to** it, requiring recusal pursuant to 18 U.S.C. Sec.

U.S.C. 455(a) and 455(b)(1); and illegal conduct pursuant to 42 U.S.C. Sec. 1983,

and 18 U.S.C. 1512(c)(2), involved evidence addressed for age discrimination:

> THE COURT (to Telegen)**:**  This is, you don't address this in your brief.
> This is at **page 1299** of the appendix, that's the (direct) evidence. Why
> isn't that sufficient to send the claim of age discrimination to the jury,
> **even if the heresay evidence can't be considered**?  (Emphasis added.)

The Appeals Court then ruled in its written decision:

> The judge properly rejected **this evidence as heresay** inappropriate for
> summary judgment. The **only** argument the plaintiff advances on appeal
> is that the **heresay statements** are admissible as vicarious admissions.

This is certainly opposed to what the panel obtained from the petitioner's Brief when

addressing the issue in oral argument, "**even if** the heresay evidence can't be

considered." The subsequent decision carefully addressed heresay, but never

acknowledged the **direct evidence. What happened to "page 1299 of the**

**appendix" which the Appeals Court at oral argument recognized as being set**

**out in DuLaurence's Brief?**

125.  Another ruling by the Appeals Court against legal authority pertains to the

special jury verdicts, and "immediate supervisor" law. The petitioner was denied his

verdict on liability against Liberty Mutual. The Appeals Court (panel one) ruled:

> The plaintiff cites no authority to the effect that a finding of malice

32.

> on the part of **an employee [not immediate supervisor]** is binding
> on the employer, **particularly where, as the jury found, Latronico
> was acting in Liberty Mutual's legitimate corporate interests.**
> (Emphasis added.)

The U.S. Supreme Court took considerable time and effort to render three rulings on

"immediate supervisor law" and "vicarious liability": *Burlington Industries, Inc. v.*

*Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998); *Faragher v. City of Boca Raton*, 524

U.S. 775, 118 S. Ct. 2275 (1998), and *Crawford v. Metropolitan Government of*

*Nashville And Davidson County Tennessee*, 129 S. Ct. 846, 72 L. Ed. 650 (2009).

"Abuse (of judicial discretion) occurs when a material factor deserving significant

weight is ignored, when an improper factor is relied upon, or when all proper and no

improper are assessed, but the court makes a serious mistake in weighing them".

*Aoude v. Mobil Oil,* 852 F.2d 1115, 1118 (1st Cir. 1989).

126.  Further, the Appeals Court (panel one) upheld Judge Ball's allowance of

Defendant John Allen's motion for a directed verdict "for the reasons stated in (his)

motion". His argument was that he had retired one month prior to the plaintiff's 3

month probation, and was no longer employed by Liberty Mutual when the

plaintiff was terminated. The Appeals Court ruled that "the evidence at trial was

insufficient for the jury to conclude that he took any actions leading to the plaintiff's

termination". Evidence at trial showed that the "plan" to terminate the plaintiff was

put in place in November, 1994, months prior to his retirement. Further, the case

against Allen was not for "wrongful termination", but was for damages  caused by

his harassment and causing a hostile work environment, leading to an "adverse

employment action", of which termination is only one. *Noviello v. City of Boston,*

33.

398 F.3d 76 (1st Cir. 2005). The Appeals Court failed to read the trial testimony

which was a portion of the 3400 page Appendix, evidencing  "'that he was thwarted

by Allen at every opportunity'…(and) only offers his allegations (the trial testimony)

that Allen did not approve bonuses or raises and subjected the plaintiff's expense

accounts to audit" (no other had been so subjected, and it had been just prior to the

"plan"). DuLaurence was prevented the deposition to determine who was involved in

"the plan"- paragraph 80. Allen, a mid-level corporate legal manager in charge of

pay raises, was jealous of the plaintiff performing work for the CEO on the executive

floor. Allen had the plaintiff audited in an attempt to prove that the plaintiff was

stealing from the Company, to avoid placing him on a three month probation before

terminating him. This probation was mandated by the employment manual for one

with 10 years or more of employment. It would also have denied him severance pay

based on  28 years of employment. This trial testimony by Helen Sayles, who had

written the manual, and whose deposition had been prevented by the defendants'

harassment arguments and misrepresentations of prior court orders, showed that the

plaintiff was not an "at-will" employee. See paragraphs 73-80.

127.  The Trial Court for the quantum meruit claim in the employment case:

> [T]he only evidence the plaintiff offers in support of this
> are his own allegations in affidavits and depositions. There
> simply is no evidence that the defendants requested or
> authorized the plaintiff's participation in outside activities.
> To the contrary, the record contains evidence of the defendants'
> displeasure with the plaintiff's performance and lack of focus
> on his trial responsibilities.

Although the plaintiff was denied the deposition of the CEO because, as the

34.

defendants argued, this was merely an attempt at harassment, the Appendix and the

his opposition to the motion for a protective order included checks made out to the

plaintiff for his Company public relations services in helping the Company sponsor

major national events, like a Norman Rockwell PBS Thanksgiving one hour special

out of Boston and New York; testimony from mid-manager John Allen that he was

doing work for the Company at the behest of the CEO to save the Company money

in its real estate transactions; and deposition testimony from the head of Liberty

Mutual's Legal Department Christopher Mansfield that he was doing Compliance

work for the CEO and the Company Secretary. There was also the deposition

testimony of Mansfield that the plaintiff was asked by him to do some important

legal work in Texas and California, in an attempt to save the Company money. The

plaintiff had worked in Home Office performing such work prior to going to the trial

department. Mansfield also had set up a system which would allow him to be paid

for this extra work. All this was in the plaintiff's Appendix. As stated above, Allen

was jealous of the plaintiff working with those above him, and caused "adverse

employment actions" to be taken, the subject of the individual suit against him. The

Trial Court failed to recognize that John Allen was not the Company, and those

above him that were the Company had asked him to perform these duties for the

betterment of the Company. The Appeals Court simply ruled: "In opposing the

second motion for summary judgment, the plaintiff failed to provide evidence

satisfying the elements of a quantum meruit claim". In the first place, the above

evidence was misconstrued by the Trial Court, and had been provided to both courts

35.

in argument and the Appeals Court Appendix. Further, the plaintiff was improperly

denied the deposition of the CEO for the proof of this. There was, however,

Mansfield's deposition testimony which supported the elements of this claim.

128.  In the employment case, DuLaurence sought damages pursuant to Mass. Gen. L.

Ch. 151B, sec. 4, 4(A), retaliation for testifying in a Human Resources hearing for

Latronico's (the plaintiff's immediate supervisor) former secretary against him for

sex discrimination and harassment. DuLaurence attempted to obtain that information

by Liberty Mutual 30(b)(6) and Helen Sayles depositions, ordered to go forward in

April, 1997. Telegen had the 30(b)(6) order vacated by Judge Ball two months later

after she was assigned to the session, as "Liberty Mutual has proved to the Court on

numerous occasions that…the information he seeks is irrelevant, and that he seeks to

take the deposition(s) only to harass his former employer". By 2009, after Judge Ball

had ruled: "In any event, testifying on behalf of an employee in a civil suit does not

implicate a well established public policy which could form a basis for a wrongful

discharge, unlike, for example, cooperating with law enforcement authorities

investigating illegal conduct on the part of an employer". This is exactly what is set

out as actionable in Ch. 151B, sec. 4, 4(A). The defendants lied in their brief to the

Appeals Court, that DuLaurence failed to plead this, even though it had not only been

pleaded, but accepted as a claim by the MCAD. Further, after successfully arguing to

Judge Ball that these depositions were only noticed to harass the defendants, they

then got to argue, "[T]here is no evidence that either DuLaurence or Latronico's

secretary ever asserted a claim of gender discrimination or sexual harassment,

36.

whether internally or with the MCAD". The Appeals Court (panel one) at oral

argument understood that the plaintiff had pleaded it, even though argued otherwise

by the defendants: "THE COURT: 'Did you file an MCAD charge?'...MR.

DULAURENCE: 'Yes'...THE COURT: 'I'm asking about retaliation for the sexual,

assisting the secretary with her sexual harassment claim'". The Appeals Court later

failed to even mention this claim in its decision.

129.  Using the "clearly erroneous" standard for judicial abuse of discretion, the

errors were evident, obvious, and clear so as to likely affect the outcome in a

significant way. *United States v. Olano,* 507 U.S. 725, 732 (1993).

130.   As set out above, the Appeals Court (panel one) violated its duties and the

Constitution, so it lacked jurisdiction pursuant to 28 U.S.C. sec. 455(a) and sec.

455(b)(1). A judgment is void under Rule 60(b)(4) if it is entered in a manner

inconsistent with due process. *Wendt v. Leonard*, 431 F.3d 410, 413 (4th Cir. 2005).

Any judgments or rulings made by it must be rendered void as a matter of law.

131.   Both Appeals Court  panels exhibited conduct which "would entertain

reasonable questions about...impartiality". *Liteky v. U.S.,* 114 S. Ct. 1147, 1162

(1994). Judges must follow the law. 'What really matters is the appearance of bias or

prejudice'. *Liljberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 108 S. Ct.

2194; *United States v. Balistrieri,* 779 F.2d 1191 (7th Cir. 1985). 'Should a judge not

disqualify him or herself, then a judge is in violation of the Due Process Clause of

the U.S. Constitution'. *United States v. Sciuto,* 531 F.2d 842, 845 (7th Cir. 1976).

"Lack of jurisdiction" means an entire absence of power to hear or determine a case,

37.

the absence of authority over the subject matter or the parties. *People v. Medina*, 89

Cal. Rptr.3d 830, 171 Cal App. 4th 805, as modified, and rehearing denied, and

review denied (Cal. App. 1 Dist. 2009).

132.  The full extent of the judges' actions which question their impartiality were not

revealed until the Appeals Court (panel two) rendered its anti-Slapp ruling, which

had nothing to do with the law on any issue. *See e.g. United States v. Microsoft*

*Corp.*, 253 F.3d 34, 108-109 (D.C. Cir. 2001). This further evidenced the vendetta,

28 U.S.C. sec. 455(b)(1), the courts were perpetrating, retaliating for the plaintiff

alleging Judge Ball had abused her discretion in the employment case. The Courts'

rulings did not come close to dispensing justice, their Constitutional obligation.

### COUNT SEVEN

**Rules of Civil Procedure 60(b)(4)—Anti-Slapp Judgment(s) are Void**
**Title 28 U.S.C. Sec. 455(a), (b)(1) Appeals Court Panel Two —both defendants**

133.  The plaintiff hereby re-alleges and incorporates by reference, as if fully set

forth and restated herein, paragraphs 1through 111, and particularly paragraphs 40

through 43, paragraphs 112 through 132, and paragraph 91.

134.   As set out above, the anti-Slapp rulings rendered by the Appeals court (panel

two) were "clearly erroneous". They had nothing to do with any Massachusetts or

other jurisdiction case law on any of the issues, rendering the rulings and judgments

void. The panel went out of its way to uphold the defendants' frivolous anti-Slapp

motion (Mass. R. Prof C. 3.1; Mass. Gen. L. sec. 6F); and allow for the defendants'

28 U.S.C. sec. 1927 violations. The Appeals Court's reliance on *Cadle Company v.*

*Schlichtmann*, 448 Mass 242 (2007), supporting the defendants' contentions that this

38.

was "protected petitioning activity", is diametrically opposed to that cited Court's

ruling: "[A]ggressive lawyering of this sort is not protected petitioning". Id. at 254.

[A]n attorney may not claim protection of the anti-Slapp statute for...publishing

statements (in violation of Ethics rules)...in hopes of ...gaining an advantage in an

ongoing legal proceeding". Id. See paragraph 45(f).

## COUNT EIGHT

### Rules of Civil Procedure 60(b)(6)—Other Reason(s) That Justify Judgment Relief Independent Action—both defendants

135.   The plaintiff hereby re-alleges and incorporates by reference, as if fully set

forth and restated herein, paragraphs 1 through 134; particularly paragraphs 46

through 86, and paragraphs 111 and 144.

136.   As stated throughout, the plaintiff has been denied any semblance of receiving

his "day in court". He has been subject to the misconduct of the defendants; and

misconduct by the Trial Court and Appeals Court judges, including conduct by panel

one of the Appeals Court which would constitute one or more grounds for

impeachment under Article II of the United States Constitution.

137.   Stated in the Reporter's Notes: "Rule 60(b)(6) contains the residual clause,

giving the court ample power to vacate a judgment whenever such action is

appropriate to accomplish justice".

138.   "A true trial on the merits can never be held...unless each party is afforded

adequate discovery. Where one party has prevented even minimum discovery, he

forfeits the right to trial on the merits". *Litton Business Tel. Systems, Inc. v.*

*Schwartz,* 13 Mass. App. Ct. 113, 118, 430 N.E.2d 862, 865 (1982). Paragraph 111 .

39.

139.  As a direct and foreseeable result of the above, the plaintiff has suffered

damages set out above, in particular those set out in paragraph 91.

## COUNT NINE

### Title 28 U.S.C. Sec. 1927

### Costs for Unreasonable and Vexatious Multiplication of Proceedings-- both defendants

140.  The plaintiff hereby re-alleges and incorporates by reference, as if fully set

forth and restated herein, paragraphs 1 through 139, and in particular paragraphs 46

through 86, paragraphs 111 and 91.

141.  This case has proceeded for 19 years, not occasioned by the plaintiff. Although

it commenced with a 1year tracking order from its commencement until trial, it took

5 years alone for discovery and summary judgment. All the single justice appeals

requesting sanctions for preventing due process, and obstructing the proper

administration of law were denied, based on the ruling that 'all discovery matters

were to be handled by the sound discretion of the trial court judge'. When the issue

of "sound discretion" was argued to the Appeals Court (panel one), it ruled: "On

appeal...we do not interfere with the judge's discretion in the absence of a showing

of prejudicial error resulting from an abuse of discretion". As set out above and at

length before the Appeals Court (panel one), the plaintiff certainly showed

"prejudicial error". It then took 4 years for Judge Ball to reach the case for trial.

Although she was only in the session for 3 or 4 months a year, she ruled that she was

the only one who could try it. This was followed by a 2 1/2 week trial, ending with

the jury rendering a verdict for the plaintiff against Liberty Mutual, which he has still

40.

been unable to obtain. It then took 4 years to obtain trial transcripts, because in the

middle of copying, the stenographer was diagnosed with cancer. There were then

appellate briefs, argument, and decisions in the underlying employment case.

Immediately following that, a Complaint was filed which led to the frivolous anti-

Slapp motion and errant rulings.

142.   It does not matter whether the attorney represents the prevailing party or the

losing party. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 762 (1980). "[It]

depends not on which party wins the lawsuit, but how the parties conduct themselves

during the litigation". *Chambers v. Nasco,* 501 U.S. 32, 52-53 (1991). An award

under this section is warranted "when an attorney's conduct viewed objectively,

manifests either intentional or reckless disregard of the attorney's duties to the

court". *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006).

Clearly, there is convincing evidence which supports a conclusion that the

defendants acted recklessly and in bad faith, and this conduct caused unreasonably

protracted and costly litigation over a lengthy period of years.

143.   The defendants' defenses of discovery abuses were complete misdirection and

outright lies. One example of this is set out above is his explanation to the Appeals

Court (panel one) in oral argument. Telegen stated that he had not violated a

December, 1996, court order which denied him the postponement of a deposition

which he had already not shown up for on three earlier occasions over a 5 month

span, by telling the Court that it had been a discovery motion, and he was to have a

hearing on that beforehand. This is exactly what he had argued to the Trial Court,

41.

and the Court denied his motion for a protective order. As stated earlier, he avoided

sanctions for disobeying the order, but then was the ordered to produce the

12 earlier noticed deponents within 60 days, and the Court extended the tracking

order for 2 more months. Although he had argued that his schedule was too busy to

be able to comply, the judge ruled against him, stating that someone else from his

office would have to attend. He immediately wrote the plaintiff a letter that he was

not going to comply with that order either. When the plaintiff filed a further motion

for sanctions, the defendants filed a frivolous motion, stating that they would not

comply with the order because the depositions had been noticed merely to harass the

defendants, and they wanted a $25,000 bond before they would produce any

deponents. They improperly argued that his case was based on: "his discharge was in

retaliation for…Complaining when he was required to take the trolley from Back

Bay (to court)…Blowing the whistle on his boss for skipping his turn to produce

pastries for the office on Donut Day…Fighting for and saving a wall in Liberty

Mutual's executive suite…(and) Protesting against a rise in room rates at a Liberty

Mutual owned resort in Florida". He had it set down to be heard by Judge Ball with

the plaintiff's sanction motion when she returned to the session. It was the same

scenario for the Liberty Mutual 30(b)(6) deposition which was noticed, re-noticed,

and was then court ordered to have been taken within the 60 day period, a deposition

in part needed for the retaliation claims. Judge Ball then vacated the earlier order,

and denied this discovery. She later ruled in summary judgment, as the Appeals

Court noted, "She principally determined that the plaintiff failed to show that Liberty

42.

Mutual violated well-established public policies in terminating the plaintiff". The Appeals Court also stated, "[The plaintiff] does not include that evidence, nor does the plaintiff refer to, or cite to the record for such evidence". It was particularly difficult to accomplish this when the plaintiff was denied access to this information, which, according to the Appeals Court ruling, "was unnecessary".

144.   Pattern evidence, although usually not admissible, can be used to prove that there was no mistake, or that the wrongs were not merely errors in judgment: "a persistent pattern of improper behavior undeterred by lesser sanctions in prior cases (supported disbarment)". *In the Matter of Timothy J. McInerney*, 389 Mass. 528, 531 (1983). Judge Dortch-Okara in a Norfolk Superior case proceeding at the same time, a case in which Telegen was sanctioned $8,000, ruled: "The court rules that CFI's counsel (Telegen) acted without justification in terminating (the) deposition and in canceling the previously noticed depositions. The resulting motion to dismiss appears simply a pretextural justification of the improper actions taken..." *Afrow v. Cumberland Farms*, Norfolk Superior Court, No. 95-01-A (June 5, 1997). In that case Judge Barrett later sanctioned Telegen $5000 more, and with Judge Butler, threatened him with default. When this was brought to the attention of the Suffolk Superior Court Regional Administrative Judge Hinkle in one of the plaintiff's motions for sanctions, she merely sent it back to Judge Ball to confirm her earlier rulings, even in face of Telegen's defense: "I will only note that I disagree with Mr. DuLaurence's view of my conduct both in this case and in the *Afrow* case". Just prior to all of this, Defendant Telegen had been reprimanded by the Massachusetts SJC

43.

which "sought to put an end to (his) 'sporting theory of justice'", his unethical

discovery modus operandi. *GTE Products v. Stewart,* 414 Mass. 721, 725 (1993).

145.  When the plaintiff filed a complaint based on all the above illegalities, which

tested the defendants' right to their earlier judgments, the defendants filed the

frivolous anti-Slapp motion because they were already in default for not answering

the Complaint, and a judgment was about to enter for the plaintiff—more

misdirection. The anti-Slapp motion was even filed beyond the 60 day period the

statute provided, but was allowed with no motion to extend time to file it.

146. There is no one better position to assess this cause of action than Telegen

himself, as he stated in his argument to the Trial Court in the employment action

summary judgment argument:

> While DuLaurence has relentlessly pursued his claims...,
> he has failed to uncover any evidence to suggest that he was
> discharged for any reason other than his own ability to work
> effectively at his job. Moreover, during the course of
> discovery DuLaurence has revealed his true goal in bringing
> this lawsuit to be the harassment of the several defendants.
> This case has gone on long enough. Throughout, DuLaurence
> has contended...he would uncover some (evidence) during
> the course of discovery. Now, with the close of discovery
> comes the confirmation that this action is not really a lawsuit,
> but a vendetta carried out by an angry lawyer who failed with
> the only employer he ever had. Because, despite his endless
> bluster and bullying, DuLaurence has uncovered no evidence
> to suggest that Liberty Mutual wronged him in any way, all of
> DuLaurence's claims must be dismissed.

The defendants further argued:

> In order to make out his prima facie case for each of Counts II,
> III and IV of his Amended Complaint, DuLaurence must prove
> the existence of an employment contract between him and
> Liberty Mutual. He cannot do so...The Court will weigh the

44.

following factors in assessing whether an employee creates an implied contract.

At oral argument before the Appeals Court (panel one), Telegen admitted the

defendants had never provided court ordered manuals, or the court ordered

deposition of Helen Sayles who wrote the manuals, set out in paragraphs 73-80.

Therefore, the Trial Court could not weigh any factors.

## COUNT TEN

### Intentional Interference with the Practice of Law—both defendants

147.  The plaintiff hereby re-alleges and incorporates by reference, as if fully set

forth and restated herein, paragraphs 1 through 146, in particular paragraphs 46

through 86, paragraph 111, and paragraph 144 as to "intent".

148.  The defendants individually and in concert pursued a pattern of misconduct in

the litigation which was intentional and improper interference to that which is central

to the truth-seeking mission of the legal system. The plaintiff claims the existence of

a reprehensible undermining the professional standards of ethics, illuminating the

liability for litigious interference. The plaintiff has set out the above actions taken by

the defendants, supporting the claim that those actions were for the purpose of the

deliberate misadministration of justice, and for a purpose other than that of properly

adjudicating the plaintiff's claims. Not only did the defendants continually violate

the Rules of Ethics throughout discovery, but then used the fruits of these illegal

actions to support subsequent motions, oppositions, and deposition tactics, fostering

other violations. The defendants thought nothing of being in contempt of court under

Mass. R. Civ. P. 37(b)(1); when an order by one judge did not go their way, they

45.

merely disobeyed that order until such time as they could find another judge who would reverse the order, most of the time it was Judge Ball.

149.  The defendants misused the discovery process as a litigation tactic, and even committed larceny when it obtained a financial sanction award, by advising the court that they had "twice provided" the ordered salary discovery, when they admitted to the Appeals Court (panel one) at oral argument that they had never produced it.

150.  The defendants at every opportunity misrepresented facts and law, which according to the Restatement, is a form of misconduct to support a finding of liability, being part of a scheme to interfere with the proper administration of justice, as it induces or causes judges to make improper rulings.

151.  As a direct result and the foreseeable consequence of the above, the plaintiff has suffered damages as set out above, and in particular paragraph 91.

## COUNT ELEVEN

### Intentional Infliction of Emotional Distress—both defendants

152.  The plaintiff hereby re-alleges and incorporates by reference, as if fully set forth and restated herein, paragraphs 1 through 151, and paragraph 144 as to "intent".

153.  The defendants, both individually and in concert, had a duty to the plaintiff to avoid causing him emotional distress.

154.  As a direct result and a foreseeable consequence of the defendants illegal actions for 19 years, both individually and in concert, the plaintiff was caused emotional distress, including diagnosed high blood pressure, and subsequent open heart surgery, and suffering damages set out in paragraph 91 above.

46.

## PRAYER FOR RELIEF

**WHEREFORE,** the plaintiff requests judgment against the defendants as follows:

A.  For appropriate declaratory relief regarding the unlawful and unconstitutional acts and practices of the defendants;

B.  For appropriate compensatory damages in an amount to be determined at trial;

C.  For appropriate punitive and exemplary damages in an amount to be determined;

D.  For appropriate equitable relief against all defendants as allowed;

E.  For an award of reasonable attorneys' fees and costs;

F.  Vacate the judgments entered in the underlying actions;

G.  Enter judgment for the plaintiff in the underlying actions, including Rule 59(e);

H.  Award the plaintiff damages for emotional distress caused by the defendants' illegal actions over 19 years;

I.  Award the plaintiff the financial sanctions illegally exacted from him for illegal discovery tactics and larceny, plus interest from the date of the order;

J.  For such other and further relief to which the plaintiff may show himself to be justly entitled.

## VERIFICATION—DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint, and that the information contained therein is true and correct. 28 U.S.C. sec. 1746.

Executed at 190 Bridge Street, Salem, MA 01970, on June 2, 2014.

Henry J. DuLaurence, III;
      BBO# 137660

47.

By the plaintiff,

Henry J. DuLaurence, III
*Plaintiff*
190 Bridge Street, #5308
Salem, MA  01970
(978) 740-0098
Massachusetts BBO# 137660
Caskart5@icloud.com

Dated:   June 2, 2014